UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS CHRISTOPHER MCDONALD, | No. 2:16-cv-1551 JAM AC P |
| Petitioner, | |
| v. | FINDINGS AND RECOMMENDATIONS |
| ROSEMARY NDOH, | |
| Respondent. | |

INTRODUCTION

Petitioner is a state prisoner proceeding pro se with this habeas corpus action filed pursuant to 28 U.S.C. § 2254, which challenges his 2003 convictions and sentence. Petitioner paid the filing fee.

This action proceeds on the original petition filed July 7, 2016. See ECF No. 1. Petitioner challenges his convictions for second degree murder, leaving the scene of an accident, and false imprisonment, on three grounds which petitioner broadly characterizes as his actual innocence: (1) insufficient evidence; (2) ineffective assistance of trial and appellate counsel; and (3) newly discovered evidence.

Pending before the court is respondent's motion to dismiss the petition on the ground that it was filed beyond the one-year statute of limitations established by the Antiterrorism and Effective Death Penalty Act (AEDPA), 28 U.S.C. § 2244(d). ECF No. 13. Petitioner filed an

opposition, ECF No. 19, and respondent filed a reply, ECF No. 20. This matter is referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302(c). For the reasons that follow, the undersigned recommends that respondent's motion to dismiss be granted.

## CHRONOLOGY

The following dates are pertinent to the court's analysis:

- **February 7, 2003**: Following a trial by the court, petitioner was convicted in the Tehama County Superior Court of second degree murder (count one), leaving the scene of an accident (count two), and false imprisonment (count three). Petitioner was sentenced to an indeterminate state prison term of fifteen years-to-life on count one, a consecutive four-year term on count two, and an eight-month term on count three. Lodg. Doc. 1. Petitioner appealed.

- **September 1, 2004**: The California Court of Appeal, Third Appellate District, modified the judgment to stay execution of sentence on count three (false imprisonment). In all other respects, the judgment was affirmed. Lodg. Doc. 2. Petitioner did not seek review in the California Supreme Court.

- Petitioner later pursued one full round of petitions seeking collateral review in the state courts:

- **May 17, 2015**: Petitioner filed a habeas petition in the Tehama County Superior Court. Lodg. Doc. 3.

- **June 5, 2015**: The petition was denied as untimely in a written opinion, citing In re Robbins, 18 Cal. 4th 770, 780 (1998), and finding no exceptions thereto. Lodg. Doc. 4.

- **July 20, 2015**: Petitioner filed a habeas petition in the California Court of Appeal, Third Appellate District. Lodg. Doc. 5.

- **July 31, 2015**: The petition was denied "as being repetitive" (successive) citing In re Clark, 5 Cal. 4th 750, 782-83, 797-98 (1993). Lodg. Doc. 6.

- **September 1, 2015**: Petitioner filed a habeas petition in the California Supreme Court. Lodg. Doc. 7.

////

- **December 9, 2015**: The petition was summarily denied with citations to In re Robbins, 18 Cal. 4th 770, 780 (1998), and People v. Duvall 9 Cal. 4th 464, 474 (1995). (Lodg. Doc. 8).

- **July 1, 2016**: Petitioner filed his federal petition in this court.[1] ECF No. 1.

## MOTION TO DISMISS

Respondent moves to dismiss the instant federal petition on the ground that it was untimely filed after expiration of the one-year statute of limitations set forth in 28 U.S.C. § 2244(d)(1)(A) (limitations period concludes one year after "the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review"). Respondent contends that petitioner is entitled to neither statutory nor equitable tolling. See ECF No. 13.

Petitioner initially asserts that he is entitled to equitable tolling under 28 U.S.C. § 2244(d)(1)(A), "from 2004 to late February 2015." This period allegedly encompasses petitioner's unsuccessful efforts to obtain his case file from his appellate counsel, and concludes when petitioner received a copy of the February 18, 2015 report prepared by his private investigator, Carl A. Bennett.[2] Mr. Bennett was hired by petitioner's family on January 5, 2015, when they had finally "earned enough funds." ECF No. 1 at 17, 19-20.

Petitioner argues in the alternative that calculation of the limitations period should be premised on 28 U.S.C. § 2244(d)(1)(D), pursuant to which the limitations period concludes one year after "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner contends that the new factual predicate triggering application of this statute occurred in "late February 2015 [], when he

---

[1] This date reflects application of the prison mailbox rule, which deems a document served or filed on the date a prisoner signs the document (or signs the proof of service, if later) and gives it to prison officials for mailing. See Houston v. Lack, 487 U.S. 266 (1988) (establishing prison mailbox rule); Campbell v. Henry, 614 F.3d 1056, 1059 (9th Cir. 2010) (applying the mailbox rule to both state and federal filings by prisoners). All of petitioner's filing dates reflect application of the prison mailbox rule unless otherwise noted.

[2] A full copy of the "Bennett report," dated February 18, 2015, is attached to petitioner's federal petition, see ECF No. 1-1 at 1-127; it was also attached in full to petitioner's California Supreme Court petition, see Lodg. Doc. 7; selected portions were attached to petitioner's petitions filed in the Tehama County Superior Court, see Lodg. Doc. 3, and the California Court of Appeal, see Lodg. Doc. 5.

3

received the new evidence from the private investigator." ECF No. 19 at 3-4.

More broadly, petitioner contends that he is actually innocent, and that his petition is therefore exempt from the statute of limitations. See ECF Nos. 1, 19. Respondent has addressed each of petitioner's contentions. See ECF Nos. 13, 19.

## STATUTE OF LIMITATIONS

### I. Legal Standards

Under AEDPA, "[a] 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court." 28 U.S.C. § 2244(d)(1). The statute provides four alternate trigger dates for commencement of the limitations period. Id., § 2244(d)(1)(A)-(D).

This limitations period is statutorily tolled during the time in which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending . . . ." 28 U.S.C. § 2244(d)(2). A state petition is "properly filed," and thus qualifies for statutory tolling, if "its delivery and acceptance are in compliance with the applicable laws and rules governing filings." Artuz v. Bennett, 531 U.S. 4, 8 (2000). Moreover, "[t]he period between a California lower court's denial of review and the filing of an original petition in a higher court is tolled – because it is part of a single round of habeas relief – so long as the filing is timely under California law." Banjo v. Ayers, 614 F.3d 964, 968 (9th Cir. 2010); see also Carey v. Saffold, 536 U.S. 214, 216-17 (2002) (within California's state collateral review system, a properly filed petition is considered "pending" under Section 2244(d)(2) during its pendency in the reviewing court as well as during the interval between a lower state court's decision and the filing of a petition in a higher court, provided the latter is filed within a "reasonable time").

The limitations period may be equitably tolled if a petitioner establishes "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." Holland v. Florida, 560 U.S. 631, 649 (2010) (quoting Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005)). "The high threshold of extraordinary circumstances is necessary lest the exceptions swallow the rule." Lakey v. Hickman, 633 F.3d 782 (9th Cir. 2011)

(citations and internal quotation marks omitted). Petitioner bears the burden of proving application of equitable tolling. Banjo, 614 F.3d at 967 (citations omitted).

II. Analysis

    A. Timeliness Following Finality of Direct Review under 28 U.S.C. § 2244(d)(1)(A)

Following the Court of Appeal's modification of judgment on September 1, 2004, petitioner had 40 days to file a petition for review in the California Supreme Court. See former Rules 24(b)(1), 28(e)(1), Cal. Rules of Court (now Rules 8.264(b)(1), 8.500(e)(1)) effective Jan. 1, 2007) (30 days for Court of Appeal decision to become final; 10 days thereafter to seek review by the California Supreme Court); accord, Waldrip v. Hall, 548 F.3d 729, 735 (9th Cir. 2008).

Thus, the time for petitioner to seek direct review ended 40 days after September 1, 2004, on Monday, October 11, 2004. However, petitioner did not seek review in the California Supreme Court. Therefore, the statute of limitations under Section 2244(d)(1)(A) commenced the following day, on October 12, 2004. See Patterson v. Stewart, 251 F.3d 1243, 1246 (9th Cir. 2001) (citing Fed. R. Civ. P. 6(a)). This one-year limitations period expired on October 11, 2005. Petitioner did not file his federal petition until July 1, 2016, more than ten years later.

There are no grounds for statutory tolling. Petitioner did not seek collateral review until he filed his first state habeas petition on May 17, 2015, nearly ten years after expiration of the limitations period under Section 2244(d)(1)(A). Petitions for collateral review filed after expiration of the limitations period do not revive the statute of limitations. See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003) ("section 2244(d) does not permit the reinitiation of the limitations period that has ended before the state petition was filed").[3]

Petitioner asserts that he is entitled to equitable tolling "from 2004 to late February 2015," for the following reasons, ECF No. 1 at 19-20 (internal citations omitted):

---

[3] Additionally, the rejection of petitioner's state petitions on timeliness grounds renders the petitions "improperly filed" and therefore unreviewable in this court. See Pace, 544 U.S. at 414 ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2).").

> McDonald tried for ten years to get his file from his appellate attorney with no avail. McDonald's attorney effectively abandoned him because he failed to communicate with Petitioner and implement his reasonable request for his file, and thereby created extraordinary circumstances sufficient to justify equitable tolling.
>
> Equally important, while it would have technically been possible for McDonald to file a petition without his legal file, the contents of such petition would make it unrealistic to expect a habeas petitioner to prepare and file a meaningful petition on his own within the limitations period without access to his legal file. This is especially true in light of the private investigator's report that clearly establishes significant facts in support of McDonald's actual innocent claim that would not have been available to Petitioner without his legal file.

"When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999). Even if the failure of petitioner's appellate counsel to provide petitioner with his legal file could reasonably be characterized as an "extraordinary circumstance" preventing petitioner from timely pursuing collateral relief, see e.g. Espinoza-Matthews v. California, 432 F.3d 1021, 1027 (9th Cir. 2005), petitioner has failed to demonstrate due diligence in seeking to timely obtain his legal file.

Petitioner asserts in his federal petition that he exercised due diligence because he "wrote to his appellate attorney for ten years requesting his legal file. He was transferred from prison to prison during this time[.]" ECF No. 1 at 20. Petitioner elaborates on these statements in his opposition to respondent's motion to dismiss, but his further explanation provides no additional facts from which to reasonably infer that petitioner actively sought to obtain his legal file.[4] In

---

[4] Petitioner explains, ECF No. 19 at 5-6 (original emphasis) :
> The facts in the Petition reflect that Petitioner was convicted on February 7, 2003. He was sentenced on March 10, 2003. He was received into CDCR on March 13, 2003. In August 2004, McDonald was transferred to Montana fighting a pending federal case. On September 1, 2004, the state court of appeal opinion was filed. From **August 2004 to July 2005**, he was confined in the State of Montana. He had no trial transcripts or other records during this time. He wrote his appellate attorney requesting the transcripts with no avail. From **July 2005 to May 2007**, he was transferred back to California and held in Pelican Bay State Prison. He had no trial transcripts or other records during this time. He wrote his appellate attorney requesting the transcripts with no avail. From **May 2007 to December 2010**, he was transferred and housed in Pleasant Valley State Prison. He had no trial transcripts of other

6

response to respondent's argument that petitioner has failed to present any proof of his diligence, e.g. copies of letters sent to his appellate attorney or other evidence demonstrating that petitioner otherwise sought to obtain his legal file during this ten-year period, petitioner asserts, unpersuasively, that he did not have access to a copy machine in prison.[5] See ECF No. 19 at 6. Petitioner further asserts that respondent's counsel "could have easily contacted Petitioner's appellate attorney and inquired about these letters but failed to do so . . . . could have accessed Petitioner's prison mail logs . . . . could have contacted the Private Investigator . . . . [and] did not disprove or specifically contradict Petitioner's facts or case law[.]" Id. at 6-7. However, petitioner fails to recognize that he bears the burden of proving entitlement to equitable tolling.

Petitioner attempts to demonstrate that he acted diligently after he obtained the assistance of Mr. Bennett. Petitioner asserts that after his "family finally raised enough funds to hire a private investigator to retrieve his legal file and conduct an adequate investigation in support of [petitioner's] actual innocence," petitioner "constructed" his initial state habeas petition "within 90 days" and then diligently exhausted his remedies in the state courts. ECF No. 1 at 20. Petitioner avers, id. (as edited by the court):

> In light of these circumstances, it should be clear that McDonald acted with reasonable diligence in hiring a professional to obtain his legal file, then review his case and prepare a report; and then filing a state habeas corpus petition in all three state courts without delay.

However, the critical period for assessing a petitioner's diligence is *during* the

---

records during this time. He wrote his appellate attorney requesting the transcripts with no avail. From **December 2010 to February 2011**, he was transferred and housing in High Desert State Prison. He had no trial transcripts or other records during this time. He wrote his appellate attorney requesting the transcripts with no avail. From **February 2011 to April 2011**, he was transferred and housed in Salinas Valley State Prison. He had no trial transcripts of other records during this time. He wrote his appellate attorney requesting the transcripts with no avail. From **April 2011 to late 2014**, he was transferred and housed in Mule Creek State Prison. He had no trial transcripts of other records during this time. He wrote his appellate attorney requesting the transcripts with no avail. Finally, on **January 5, 2015**, his family earned enough funds to retain a private investigator[.]

[5] It is the observation and experience of the undersigned that prison libraries routinely offer copying services to prisoners.

7

extraordinary circumstance. As the Ninth Circuit Court of Appeals observed in Gibbs v. Legrand, 767 F.3d 879, 892 (9th Cir. 2014) (original emphasis, internal citations omitted):

> By requiring those seeking equitable tolling to show they exercised reasonable diligence, we ensure that the extraordinary circumstances faced by petitioners . . . were the cause of the tardiness of their federal habeas petitions. [I]f the person seeking equitable tolling has not exercised reasonable diligence in attempting to file, after the extraordinary circumstances began, the link of causation between the extraordinary circumstances and the failure to file is broken. [¶] Because it is most relevant to the causation question, we are *primarily* concerned with whether a claimant was diligent in his efforts to pursue his appeal *at the time his efforts* were being thwarted. In other words, diligence *during* the existence of an extraordinary circumstance is the key consideration. Also relevant is whether petitioners "pursued their claims within a reasonable period of time before the external impediment . . . came into existence. Diligence after an extraordinary circumstance is lifted may be illuminating as to overall diligence, but is not alone determinative. This conclusion draws . . . on the obvious inference that diligence after the fact is less likely to be probative of the question of whether the extraordinary circumstance caused the late filing[.]

Under Gibbs, petitioner's unsupported assertion that he sought unsuccessfully to obtain his legal file from his appellate counsel for a ten-year period fails to demonstrate the diligence required to support equitable tolling. Petitioner's apparent diligence after obtaining the Bennett report does not remedy this problem.[6]

For these reasons, the undersigned finds that petitioner's federal petition was untimely filed under 28 U.S.C. § 2244(d)(1)(A).

### B. New Factual Predicate under 28 U.S.C. § 2244(d)(1)(D)

Petitioner contends, alternatively, that he is entitled to a "late February 2015" trigger date under 28 U.S.C. § 2244(d)(1)(D). This provision calculates AEDPA's one-year limitations

---

[6] Further, petitioner's reliance on Holland is misplaced because the circumstances are readily distinguishable. As observed by the Supreme Court, Holland, 560 U.S. at 653:
> Holland not only wrote his attorney [Collins] numerous letters seeking crucial information and providing direction; he also repeatedly contacted the state courts, their clerks, and the Florida State Bar Association in an effort to have Collins – the central impediment to the pursuit of his legal remedy – removed from his case. And, the very date that Holland discovered that his AEDPA clock had expired due to Collins' failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.

8

period commencing with "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Petitioner asserts that he discovered the factual predicates for his pending claims when he received a copy of the Bennett report, which petitioner characterizes as "new evidence" of his "actual and factual innocence of the second-degree murder." ECF No. 19 at 13.

Mr. Bennett's report was based on his review of existing police reports, photos and diagrams; preliminary hearing and trial transcripts; and, reportedly, an accident reconstruction.[7] Mr. Bennett concluded that "the elements of Penal Code Section 187" were not met because the evidence demonstrates petitioner had no malice toward the victim (Sforzini) when he was carried on the hood of petitioner's car until it stopped, then fell to the ground, suffering a fatal brain injury.[8] Bennett opined that the evidence supports a reasonable inference that Sforzini was high on methamphetamine, "squared off at the vehicle," "jumped on the hood" and "took hold." ECF No. 1-1 at 124. Defendant "decided to accept the challenge and drove with Mr. Sforzini at a slow speed over the bridge. Once on the east side of the bridge he slowed to a stop to let Mr. Sforzini off. Mr Sforzini in an attempt to hastily distance himself from the vehicle and due to his state of impairment stumbled and fell." Id. Mr. Bennett concluded that plaintiff's trial counsel was ineffective "due to the lack of a thorough and complete investigation by getting complete

---

[7] As found by the Tehama County Superior Court when denying petitioner's first state petition for collateral review, Lodg. Doc. 4 at 3:
> Petitioner attaches an investigation report. Apparently Petitioner retained a private investigator. . . . Many of the conclusions contained in this report reach conclusions based on levels of expertise that are not established by the declarant. For example, he gives opinions on accident reconstruction without foundation.

[8] In contrast, as recounted in part by the California Court of Appeal, Lodg. Doc. 2 at 2 (fn. omitted):
> [T]he two cars came upon each other . . . . Sforzini alighted and approached defendant's car. When Sforzini was a short distance from the car, defendant rapidly accelerated, which forced Sforzini to jump onto the hood to avoid being struck. Defendant sped away over a nearby bridge, reaching a speed of 60 miles per hours. Witnesses observed defendant's vehicle swerve and its tires smoke as it came to a stop, hurling Sforzini off the hood and onto the pavement, where he suffered a fatal brain injury.

However, the Court of Appeal noted that "[t]he evidence was in conflict concerning who applied the brakes." Id. at 2-3 n.2.

9

interviews of all witnesses and involved parties, evaluating physical evidence and obtaining expert testimony," and for waiving a jury trial. Id. at 124-25.

"Section 2244(d)(1)(D) provides a petitioner with a later accrual date than section 2244(d)(1)(A) only if vital facts could not have been known by the date the appellate process ended. The due diligence clock starts ticking when a person knows or through diligence could discover the vital facts, regardless of when their legal significance is actually discovered." Ford v. Gonzalez, 683 F.3d 1230, 1235 (9th Cir.), cert. denied, 133 S. Ct. 769 (2012) (citations and internal quotation marks omitted).

Petitioner conflates Mr. Bennett's theories (which petitioner mischaracterizes as "new evidence") with the "vital facts" underlying petitioner's "new claims." Although Mr. Bennett's report is relatively new, the vital facts underlying his conclusions existed by the date petitioner's appellate process ended. See Ford, 683 F.3d at 1235. Petitioner implicitly concedes this, by emphasizing that he was unaware of his "new claims" until Mr. Bennett retrieved and reviewed petitioner's existing legal file. The limitations period under Section 2244(d)(1)(D) commences when petitioner learned of the facts underlying his claim, or could have learned of the facts through the exercise of due diligence, not when petitioner learns the alleged legal significance of those facts. See Hasan v. Galaza, 254 F.3d 1150, 1154 n.3 (9th Cir. 2001) ("This is not to say that [petitioner] needed to understand the legal significance of those facts – rather than simply the facts themselves – before the due diligence (and hence the limitations) clock started ticking."); Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000), as amended (Jan. 22, 2001) ("Time begins when the prisoner knows (or through diligence could discover) the important facts, not when the prisoner recognizes their legal significance.").

Similarly, to "have the factual predicate for a habeas petition based on ineffective assistance of counsel, a petitioner must have discovered (or with the exercise of due diligence could have discovered) facts suggesting both unreasonable performance and resulting prejudice." Hasan, 254 F.3d at 1154. Here, petitioner was aware of the factual predicates for his ineffective assistance claims by the conclusion of appellate review. Ford, 683 F.3d at 1235.

////

For these reasons, the undersigned finds that Mr. Bennett's report does not support a later trigger date for the commencement of AEDPA's limitations period under Section 2244(d)(1)(D).

Accordingly, under 28 U.S.C. § 2244(d)(1)(A), the instant federal petition was untimely filed.

## ACTUAL INNOCENCE

Petitioner contends that the Bennett report demonstrates he is actually innocent of second degree murder, thus supporting an equitable exception to AEDPA's limitations period and requiring consideration of petitioner's actual innocence claim on the merits under McQuiggin v. Perkins, 133 S.Ct. 1924 (2013).

### I. Legal Standards

In order to obtain relief from the statute of limitations, a petitioner claiming actual innocence must establish a miscarriage of justice under the standard announced in Schlup v. Delo, by demonstrating "'that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" Lee v. Lampert, 653 F.3d 929, 938 (9th Cir. 2011) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). "Actual innocence" demonstrating a miscarriage of justice "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623-24 (1998) (citation omitted). To make a credible claim of actual innocence, the petitioner must produce "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S. at 324. Upon presentation of new reliable evidence, the district court considers all the evidence to make a "'probabilistic determination about what reasonable, properly instructed jurors would do.'" House v. Bell, 547 U.S. 518, 538 (2006) (quoting Schlup, 513 U.S. at 330).

### II. Analysis

Mr. Bennett's conclusions, which are based on his review of petitioner's existing legal file and purported accident reconstruction, do not qualify as new factual evidence and provide no evidence of petitioner's actual innocence within the meaning of Bousley and Schlup. Mr. Bennett's conclusions reflect no more than an alternate theory of petitioner's state of mind and

conduct during the subject incident, in which petitioner generally concedes his participation. For these reasons, the undersigned need not consider Mr. Bennett's opinions in light of all the evidence. There has been no miscarriage of justice which could support an equitable exception to AEDPA's statute of limitations.

## CONCLUSION

Accordingly, for the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Respondent's motion to dismiss, ECF No. 13, be granted; and

2. Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254, ECF No. 1, be dismissed with prejudice because untimely filed under 28 U.S.C. § 2244(d)(1)(A).

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty one days after service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any response to the objections shall be filed and served within seven days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

If petitioner files objections, he may also address whether a certificate of appealability should issue and, if so, why and as to which issues. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

DATED: June 16, 2017

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE